CITIZENS STATE BANK, MARSH-
FIELD, Missouri, and William G.
Magers, Plaintiffs-Appellants,

v.

STATE BANKING BOARD of Missouri,
and its Members, William J. Bollwerk,
William F. Enright, Jr., L. W. Meier, Jr.,
Don C. Redding, and Daniel J. McAu-
liffe, and Edgar H. Crist, Commissioner
of Finance, Defendants-Respondents,

and

Webster County Bank,
Intervenor-Respondent.

No. 11090.

Missouri Court of Appeals,
Southern District,
Division Two.

July 25, 1980.

Motion for Rehearing and for Transfer
Denied Aug. 14, 1980.

Application to Transfer Denied
Sept. 9, 1980.

Robert W. Spangler, Crouch, Crouch, Spangler & Douglas, Harrisonville, Glenn A. Burkart, Mann, Walter, Burkart, Weathers & Walter, Springfield, for plaintiffs-appellants.

John D. Ashcroft, Atty. Gen., Terry C. Allen, Asst. Atty. Gen., Irven L. Friedhoff, Gen. Counsel, Division of Finance, Jefferson City, for defendants-respondents.

William H. McDonald, Woolsey, Fisher, Whiteaker & Stenger, Springfield, for intervenor-respondent.

PREWITT, Judge.

This appeal is from a circuit court judgment affirming an order of the State Banking Board granting a charter to the Webster County Bank.

An application for a certificate of incorporation for the Webster County bank was filed with the Commissioner of Finance. Pursuant to § ·362.030, RSMo 1969, the Commissioner investigated, determined that the "statutory criteria have been met", and granted the charter. It was "conditioned" upon a commitment of the Federal Deposit Insurance to insure the bank's deposits prior to opening, the employment of a "qualified lending officer" prior to opening and the bank being open for business in "permanent quarters" within eighteen months or

such further period as extended by the Commissioner.

Appellants appealed to the State Banking Board, contending that the charter should not have been granted. Following a hearing, a majority of the Board "upheld" the granting of the charter "with the conditions imposed thereon for the reason that proponents have met all of the statutory requirements of Chapter 362, RSMo 1969."[1] Paragraph 14 of the Board's Findings of Fact states that "all statutory criteria have been met by the applicants for the charter except those conditions previously set forth herein as imposed by the Commissioner".

As no question is raised regarding the sufficiency of the evidence to support the issuance of the charter, we see no purpose in lengthening this opinion by attempting to summarize the extensive testimony.

Appellants contend: (I) that the proposed charter is void because the State Banking Board acted in excess of its authority and jurisdiction in granting the charter: (a) when it found in paragraph 14 of its Findings that the statutory criteria had not been met, and (b) granted the charter upon the conditions set forth by the Commissioner; (II) that the granting of the charter was void because of those conditions and because of "vagueness and lack of self-enforcement"; (III) that the Board erred in not specifically finding: (a) the amount of deposits to be gained by the proposed bank during its first three years or more of operation; (b) the amount of income to be generated from the deposits; (c) the amount of expenses to be incurred; and (d) the amount of profit or loss for the proposed bank at the end of three years or more; as these findings were necessary to support the Board's conclusions that the probable volume of business in the locality is sufficient to insure and maintain the solvency of the proposed bank.

We consider first the appellants' contentions under Point I. It is premised on the contention that the Board did not find that all statutory criteria have been met because of the conditions and the language stated in paragraph 14 of the Findings of Fact quoted above.

■ The Board specifically found in its Findings of Fact and concluded in its Conclusions of Law, in language similar to the statute, that all requirements of § 362.030 had been met. In their order they recite that "proponents have met all the statutory requirements of Chapter 362, RSMo 1969". Paragraph 14 recites that the "statutory criteria" have been met, but then adds "except those conditions previously set forth herein as imposed by the Commissioner of Finance." None of those conditions are statutory and they could not be an exception to the Board's determination that the criteria were met. The conditions could not have been met at that time as they could only be fulfilled after the charter was granted. We conclude, in view of the specific findings made, that the conditions were mistakenly included in a reference to the statutory requirements. How or why this occurred, we cannot tell from the record before us. While this confusing language is not what we would have preferred, we cannot require from such a board the "precise terminology courts strive for". *State ex rel. Weinhardt v. Ladue Professional Building, Inc.*, 395 S.W.2d 316, 320 (Mo.App.1965). Reading the Board's Findings of Fact, Conclusions of Law, and Order as a whole, we believe that the Board found the required criteria. They stated generally and specifically that they did. The inconsistent language in paragraph 14 does not require us to find otherwise.

■ In oral discussion, questions regarding certain statutory requirements were raised by Board members. Appellants contend that this and the conditions show that Board members "recognized that the conditions imposed were necessary in meeting the statutory criteria". We do not believe it can be implied that the Board found

1. The Board's Findings of Fact, Conclusions of Law, and Order is set out in an appendix to this opinion.

that future conditions upon the bank were necessary for the incorporators to comply with § 362.030 where the Board expressly found the required statutory findings. Trying to predict what may happen in the future is a highly speculative task, particularly when concerned with financial matters. There likely could be doubts in the minds of Board members no matter which decision was made. It appears that the Board made a decision that the statutory criteria were met and perhaps because they thought that these conditions would give further assurance that the proposed bank will be solvent, retained the conditions. If the Board exceeded its authority and jurisdiction in imposing the conditions, only the proposed bank on whom the conditions are imposed can complain. If the statutory criteria were met, granting the charter was proper. Appellants can only complain if they were not met. We believe the Board found they were met. Point I is denied.

We next consider Point II. Appellants liken the Board's order to a conditional judgment or decree condemned by such holdings as *Beck v. Hoel-Steffen Construction Company*, 586 S.W.2d 818 (Mo.App. 1979), *Phelps County Bank v. Modern Security Life Insurance Company*, 586 S.W.2d 746 (Mo.App.1979), and *Wallace v. Hankins*, 541 S.W.2d 82 (Mo.App.1976). We are not convinced that such holdings have any application here, as judgments are required to be "the final determination of the rights of the parties in the action". Rule 74.01, V.A. M.R. However, even if the requirements applicable to judgments apply to the order before us, those cases do not aid appellants. These conditions cannot be conditions precedent to the granting of the charter as they cannot be complied with until the charter is granted. The order here was not like the conditional judgments condemned in the cases cited as the charter sought was to be granted before the conditions could be met, and it was not an order which would "become operative" upon the occurrence of the conditions. See *Beck v. Hoel-Steffen Construction Company*, supra, 586 S.W.2d 818; *Phelps County Bank v. Modern Security Life Insurance Company*, supra, 586

S.W.2d at 747; *Wallace v. Hankins*, supra, 541 S.W.2d at 84.

We also do not think that adding these conditions makes the order void. It may be that the Commissioner or the Board have authority to do this separate and apart from granting the charter, but we see no point in discussing that question as the party on whom the conditions are imposed does not complain. Whether the conditions were "vague" or "the order was not self-enforcing" are matters between the proposed bank and the Commissioner or the Board. If the statutory criteria are present, the charter must be granted. If not, it must be refused. Those are the only alternatives. The Board found the statutory criteria. These having been found, the incorporators of the proposed bank are entitled to a charter and the conditions are not relevant in determining if the charter should have been granted. In deciding the issues before us, we believe that the conditions may be regarded as surplusage not affecting the validity of the order. See *State, on Inf. of McKittrick v. Koon*, 356 Mo. 284, 201 S.W.2d 446, 453 (1947), and 49 C.J.S. Judgments § 84. Point II is denied.

Point III contends that the State Banking Board was required to make a finding: (a) detailing the amount of deposits to be gained by the proposed bank in its first three years or more of operation; (b) the amount of income to be generated from the deposits; (c) the amount of expenses to be incurred; and (d) the amount of profit or loss projected for the proposed bank at the end of three years or more. Several witnesses testified regarding their projections of such figures; all reaching different results. All of this was, of course, opinion evidence. We do not believe that the Board has to make a specific finding in dollar amounts to support its conclusion that the probable volume of business in the locality is sufficient to insure and maintain the solvency of the new bank. Each member may estimate a different amount or range of figures, but all, or a majority, may believe that the volume of business will be

sufficient to insure and maintain the bank's solvency. Such estimates and opinions are so susceptible of miscalculation that no purpose would be served in trying to make specific findings of the amounts. See *Marshfield Community Bank v. State Banking Board*, 496 S.W.2d 17, 28 (Mo.App.1973). It is not required for the validity of administrative findings that they go into evidentiary detail. *Glasnapp v. State Banking Board*, 545 S.W.2d 382, 386 (Mo.App.1976); see also *Williams v. International Shoe Co.*, 213 S.W.2d 657, 661 (Mo.App.1948), and 73 C.J.S. Public Administrative Bodies and Procedure § 140. The Findings of Fact, Conclusions of Law, and Order here were not like the order considered in *Century State Bank v. State Banking Board of Missouri*, 523 S.W.2d 856 (Mo.App.1975). We believe that there were basic findings here sufficient to show how the controlling issues were decided. See *Glasnapp v. State Banking Board*, supra, 545 S.W.2d at 385–387. Point III is denied.

The judgment is affirmed.

All concur, except BILLINGS, MAUS and GREENE, JJ., recused.

## APPENDIX

BEFORE THE STATE BANKING BOARD
STATE OF MISSOURI

| | | |
|---|---|---|
| In re the matter of: | ) | |
| | ) | |
| Granting of the charter | ) | |
| | ) | No. 12–77 |
| to Webster County Bank, | ) | |
| | ) | |
| Marshfield, Missouri, by | ) | |
| | ) | |
| Commissioner of Finance | ) | |
| | ) | |
| Edgar H. Crist | ) | |

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER

This matter, having come before the State Banking Board by hearing on December 12, 1977, and this Board being fully advised in the premises and based on the entire record before the Board, the following findings of fact, conclusions of law, and order are hereby entered:

## FINDINGS OF FACT

1. On May 10, 1977, an original and two copies of an application for certificate of incorporation for the proposed Webster County Bank were filed with the Commissioner. Said application contained articles of agreement signed and acknowledged by the parties thereto. Two copies of said articles were returned to the incorporators, one copy of which was recorded in the office of recorder of deeds of Webster County, Missouri. Said proposed bank is to be located at 225 North Clay, Marshfield, Webster County, Missouri. A copy of said articles with the recorder's certificate of recording affixed was returned to the Commissioner of Finance and is on file in his office.

2. There were thirteen persons who associated themselves in said articles. Said articles set out the corporate name of the proposed corporation; the name of the city in which the corporation is to be located; the amount of capital stock of the corporation; the number of shares into which it is divided, the par value thereof, and that the same had been subscribed in good faith and all thereof actually paid up in lawful money of the United States and is in the custody of the persons named as the first board of directors and managers; the names and places of the residences of the several shareholders and the number of shares subscribed by each; the number and names of the first directors and the purposes for which the corporation is formed; and that the corporation's life is perpetual.

3. The incorporators have paid all incorporation and other fees in full.

4. The Commissioner caused an examination to be made to ascertain whether the requisite capital of said bank had been subscribed to in good faith and paid in actual cash and was ready for use in the transaction of business of said bank.

5. The capital of the proposed bank in the sum of Seven Hundred Fifty Thousand Dollars ($750,000) is on deposit at the Mercantile Bank, Springfield, Missouri, in the

form of certificates of deposit and savings accounts; and the requisite capital of the bank is therefore subscribed in good faith and paid up in actual cash. At the time of the Commissioner's granting of the charter of said bank, Mercantile Bank indicated to the Comissioner (sic) that the aforesaid sum is ready for use in the transaction of business. Further, it is noted that appellants did not raise any contention in its notice of appeal or otherwise that proponents did not in fact meet the aforesaid criteria.

6. The Commissioner caused an examination to be made to ascertain whether the character, responsibility, and general fitness of the persons named in said articles were such as to command confidence and warrant belief that business of said bank would be conducted honestly and efficiently in accordance with the intent and purpose of Chapter 362, RSMo 1969. The investigation was conducted by the Commissioner's staff, mainly Supervisor of Applications Ward who found that the persons named in said articles did meet the aforesaid criteria. No evidence was adduced or received by the Board which would indicate anything contrary to the Commissioner's findings. Further, it is noted that appellant did not raise any contention in its notice of appeal or otherwise that proponents did not in fact meet the aforesaid criteria.

7. The investigation established and the Board finds that the persons named in the articles of agreement are responsible businessmen of substantial means.

8. Based upon Mr. Ward's investigation, the transcript of the Commissioner's hearing, and the absence of any allegation or fact or evidence to the contrary, the Board does hereby find that the character, responsibility, and general fitness of the persons named in said articles are such as to command confidence and warrant belief that the business of said bank will be conducted honestly and efficiently in accordance with the intent and purpose of Chapter 362.

9. The Commissioner did cause to be made an investigation to determine if the convenience and needs of the community to be served justified and warranted the opening of the proposed bank and if the probable volume of business in the locaility (sic) was sufficient to insure and maintain the solvency of the new bank and the solvency of the existing banks without endangering the safety of any bank in the locality as a place of deposit of public and private money. The incorporators submitted a feasibility study and amendments thereto. This study, formed by Clay Blair and Associates, is a part of the record. Additionally, the record contains a study conducted by Mr. Ward of the Commissioner's office. The record also contains projections of performance as prepared by proponent Harry Staley. The Board finds that the community where said bank is to be located is a growing community; that both Marshfield, Missouri, and Webster County, Missouri, have had a recent increase in population; that said city and county are located in one of the fastest growing areas in the state of Missouri; that independent sources project continued future growth; that there has been a recent increase in school enrollment and utility hookups in said city and county; that there has been a recent increase in the income of the inhabitants of said city and county; that the increased growth of Springfield, Missouri, and Greene County, Missouri, is having a favorable economic impact upon said city and county as per appellants' own witness, John Bill Greer; that the Citizens State Bank, one of the appellants herein, has sustained steady and significant growth in deposits within recent times; that a community betterment survey, correspondence in the Commissioner's file, and the results of Mr. Ward's field investigation indicate that the residents of said city and county believe that the entry of said bank into the banking structure in said community would provide an added choice for banking services and would accrue to the benefit of the public; that the specific proposed location of the bank will provide easy and convenient access to the area residents; that in Marshfield, Missouri, there is one existing bank, namely Citizens State Bank, one of the appellants herein, which is relatively speaking one of the most profitable banks in the state of Missouri,

having deposits in excess of Twenty Million Dollars ($20,000,000); and that the present population of the primary service area is conservatively estimated to be in excess of 18,000 people.

10. Mr. Ward, who has conducted other investigations for the Division of Finance, testified as to the investigation of the proposed Webster County Bank. Mr. Ward's projections indicated that the new bank would obtain a substantial amount of deposits and that it would be profitable after three years. The Board finds that Mr. Ward's projections while not necessarily accurate or reasonable are entitled to some weight in light of the testimony of all the witnesses, including Mr. Jenkins, Mr. Blair, and Mr. Greer, and finds and believes that the total deposits in Webster County and available in Marshfield, Missouri, based on the testimony of all these witnesses, are sufficient to cause the new bank to be profitable after three years of operation and not to cause it to be rendered insolvent. Webster County, Missouri, is growing and the community of Marshfield, Missouri, is likewise growing and the record is clear that the existing bank has experienced substantial growth and profitability in recent years. The Board believes that it is not unusual in circumstances such as before the Board in this case for a new bank not to be profitable within the first three years of operation; however, the evidence points to the fact that the proposed bank will obtain substantial deposits in the first three years of operation sufficient to render the new bank solvent and profitable shortly after the third year of operation. In no way does the evidence cause the Board to believe that the new bank will be insolvent after three years of operation.

11. The incorporators are thirteen individuals, most of whom have been lifelong residents of Marshfield or surrounding rural areas. They include a pharmacist, an engineer, an insurance agent, an electric cooperative manager, a dentist, an attorney, the Marshfield High School football coach, several businessmen, and several farmers. These individuals have a combined net worth of more than Three Million Dollars ($3,000,000). Three of the incorporators have previous banking experience. All of the incorporators are, according to the testimony of Mr. Ward, highly regarded by Marshfield residents. Because of the confidence and trust which the incorporators enjoy in the community of Marshfield, the Board finds it reasonable to believe that they will be able to generate substantial deposits among the residents of Marshfield and the surrounding rural areas.

12. The Board further finds that the effect upon existing banks in the area would be minimal; there being some decrease in deposit growth of the existing banks, but constituting no threat to the solvency of same. In particular, we note that no bank other than the Bank of Fordland has in any way alleged in these proceedings that its solvency would be effected. However, as to the Bank of Fordland we note: (1) The Commissioner's file indicates that the management of the Bank of Fordland has contradicted this allegation. (2) Even though given notification of the Commissioner's hearing and the Board's hearing, no officer of the Bank of Fordland appeared to testify against the proposed bank. (3) Even though the aforesaid notice was clearly given both formally and informally, the Bank of Fordland has not chosen to appeal or to intervene. (4) A review of the physical factors and geographic location of the Bank of Fordland, as presented by appellants' own exhibits, indicates that there is little probability of the proposed bank having any significant effect upon the solvency of the Bank of Fordland.

13. The Board, therefore, finds on the issues of convenience and needs and solvency that the convenience and needs of Marshfield, Missouri, and Webster County, Missouri, justify and warrant the opening of the proposed bank and that the probable volume of business in the locality is sufficient to insure and maintain the solvency of the new bank and the solvency of the existing banks without endangering the safety of any bank in the locality as a place of deposit of public and private money.

14. The State Banking Board finds that all statutory criteria have been met by the applicants for the charter except those conditions previously set forth herein as imposed by the Commissioner of Finance.

## CONCLUSIONS OF LAW

1. Five or more incorporators are required to file proper and required copies of articles of agreement in writing with the Commissioner of Finance.

2. The Commissioner is required to return two copies of said articles to the incorporators, and the parties are required to record one copy of same in the office of the recorder of deeds in the county in which the bank is located and return the recorder's certificate of recording to the Commissioner.

3. The Commission is required, after payment of all incorporation fees and other fees and the filing of the proper copies of said articles, to cause an examination to be made to ascertain whether the requisite capital has been subscribed to in good faith and paid in actual cash and is ready for transaction of business with the proposed bank; and whether the character, responsibility, and general fitness of the persons named in said articles are such as to command confidence and warrant a belief that the business of said bank will be conducted honestly and efficiently in accordance with the intended purposes of Chapter 362, RSMo 1969; and if the convenience and needs of the community will be served and justify and warrant the opening of said bank therein; and if the probable volume of business in such locality is sufficient to insure and maintain the solvency of said bank and the solvency of the existing banks and trust companies within the locality without endangering the safety of any bank or trust company in the locality as a place of deposit of public and private money.

4. The Commissioner is required to grant a certificate setting forth that said bank has been duly organized and that its capital has been subscribed and paid up in full if the Commissioner finds all the provisions of the law have been complied with and if he has satisfied himself as to the facts required by Chapter 362 from the investigation caused made.

5. The Commissioner and the Board are charged under the holding of *Central Bank of Clayton v. State Banking Board of Missouri*, 509 S.W.2d 175 (Mo.App.1974), to not only permit but also to promote healthy banking competition by favoring banking entries which will stimulate competition unless either the Commissioner or the Board find that bank safety would thereby be threatened. In short, the Commissioner and the Board are affirmatively charged with the duty of discouraging monopoly in the lending field unless the restriction of banking competition is necessary to promote bank safety.

6. The certificate shall be recorded in the office of the recorder of deeds in the county in which the bank is to be located.

7. The Webster County Bank has filed with the Commissioner proper copies of the articles of agreement, paid all incorporation and other fees in full, and provided the cash required by law.

8. The requisite capital of said bank has been subscribed in good faith and paid in actual cash and is ready for use in the transction (sic) of business of the proposed bank.

9. The charter, responsibility, and general fitness of the persons named in said articles of said bank are such as to command confidence and warrant belief that the business of the proposed Webster County Bank will be conducted honestly and efficiently in accordance with the intents and purposes of the banking laws.

10. The deposit growth of area banks; the expected growth of the southwest Missouri area in general; the population growth of Marshfield, Missouri, and Webster County, Missouri, in general; the public sentiment of the community in general; the background of the incorporators and the fact that most of them are longstanding citizens of Marshfield, Missouri; the financial strength of the incorporators; the economic strength of the Citizens State Bank,

which is the only existing bank in Marshfield, Missouri; and the lack of organized opposition by area banks are items which show that the convenience and needs of the community will be served by a new bank. The convenience and needs of the community will be well served by an increase in the range of such choice which will be made possible by this charter grant.

11. Although existing area banks, and in particular the Citizens State Bank, have expanded both its energies and facilities, the mere adequacy of the service of the existing banks is no ground upon which to deny or revoke a charter. The test is whether or not the convenience and needs of the community will be served by the entry of the proposed bank, and the Board finds that they will be so served.

12. The probable volume of business and the locality of the new bank is sufficient to insure and maintain the solvency of the new bank and the solvency of the existing banks and locality, including the Citizens State Bank (the only bank in the service area challenging the charter), without endangering the safety of any bank in the locality as a place of deposit of public and private money.

13. The Board as trier of fact is charged with judging the credibility of witnesses that come before it. While there is testimony from appellants' witnesses to the effect that the proposed bank would not capture sufficient deposits to make a profit at the end of the third year, the Board concludes from all of the testimony in evidence of all the witnesses and documents that the new bank will be profitable after the third year despite that it may not be profitable in the third year and will not be rendered insolvent during or after three years of operation.

### ORDER

It is therefore ordered that:

The action of the Commissioner of Finance granting a charter to the Webster County Bank, Marshfield, Missouri, be and hereby is upheld with the conditions imposed thereon for the reason that proponents have met all of the statutory requirements of Chapter 362, RSMo 1969.

Entered this 18th day of January, 1978, before the Board, Daniel J. McAulifee, Chairman and Secretary and concurring opinions.

/s/ William F. Enright, Jr.        /s/ Daniel J. McAuliffe
    Secretary                          Chairman

/s/ Don C. Redding
    Concur

_____
    Concur

_____
L. W. Meier, Jr.
Dissenting opinion filed herewith

_____
William J. Bollwerk

BEFORE THE STATE BANKING BOARD
STATE OF MISSOURI

| | |
|---|---|
| In re the matter of: ) | |
| Granting of the charter ) | No. 12–77 |
| to Webster County Bank, ) | |
| Marshfield, Missouri by ) | |
| Commissioner of Finance ) | |
| Edgar H. Crist ) | |

### STAY ORDER

On January 18, 1978, at a meeting of the State Banking Board for the purpose of rendering a decision in the matter of the granting of a charter to the Webster County Bank, Marshfield, Missouri, by the Commissioner of Finance Edgar H. Crist, the opponent of the granting of the charter, Citizens State Bank, Marshfield, Missouri, by and through its attorney, Mr. Robert W. Spangler, orally moved that the decision of a majority of the Board affirming the granting of the charter by the Commissioner of Finance be stayed until judicial proceedings are conducted and concluded in connection with that decision.

Pursuant to Section 361.095.4, RSMo 1969, the State Banking Board has jurisdiction and authority to grant a stay of its order in connection with proceedings before it.

Therefore, by unanimous vote of the members present of the State Banking Board, it is hereby ordered that the decision of the majority of the State Banking Board approving the action of the Commissioner

of Finance in connection with the approval of a charter of the Webster County Bank with the conditions imposed thereon be stayed until such judicial determination has been made of any and all appeals of that order.

/s/ William F. Enright, Jr.     /s/ Daniel J. McAuliffe
   Secretary           Chairman

/s/ L. W. Meier, Jr.
   Concur

/s/ Don C. Redding
   Concur

_____
   Concur

_____
William J. Bollwerk
Not sitting

Dated: January 18, 1978

BEFORE THE STATE BANKING BOARD
STATE OF MISSOURI

In re the matter of:      )
Granting of the charter   )
to Webster County Bank,  )  No. 12–77
Marshfield, Missouri by   )
Commissioner of Finance  )
Edgar H. Crist         )

### DISSENTING OPINION

I respectfully dissent and would reverse the order of the Commissioner for the following reasons. I do not believe that two very important statuatory (sic) requirements have been met. At great length, we heard conflicting testimony from experts regarding the profitability of the new bank. From the evidence presented, and with my own experience in the banking business, I seriously question the profitability of the new bank by the end of the third year. This would affect their solvency and because profitability and solvency are involved, it is my belief that the needs and convenience of the people of the community are also affected.

With two very important requirements in my mind not met, I respectfully dissent from the opinion filed by my fellow Board members for the reasons stated and would have reversed the decision of the Commissioner of Finance wherein he granted a new charter to the applicant, Webster County Bank, Marshfield, Missouri.

/s/ L. W. Meier, Jr.
L. W. Meier, Jr. Member

Dated: January 18, 1978