ACCEPTED
07-14-00388-CR
SEVENTH COURT OF APPEALS
AMARILLO, TEXAS
3/17/2015 4:55:53 PM
Vivian Long, Clerk

NO. 07-14-388-CR

IN THE COURT OF APPEALS FOR

THE SEVENTH SUPREME JUDICIAL DISTRICT OF TEXAS

AT AMARILLO, TEXAS

FILED IN
FILED
March 16, 2015
Seventh Court of Appeals
Vivian Long
Clerk

***************

**ERIC HERNANDEZ**
APPELLANT,

v.

**THE STATE OF TEXAS**
APPELLEE.

***************

APPEAL FROM CAUSE NUMBER 67,846-A FROM THE
47th JUDICIAL DISTRICT COURT OF POTTER COUNTY,
THE HONORABLE DAN SCHAAP PRESIDING

***************

# BRIEF FOR THE APPELLANT

***************

John Bennett
Post Office Box 19144
Amarillo, Texas 79114
Telephone: (806) 282-4455
Facsimile: (806) 398-1988
State Bar No. 00785691
AppealsAttorney@gmail.com
Attorney for the Appellant

**THE APPELLANT REQUESTS ORAL ARGUMENT**

# IDENTITY OF PARTIES AND COUNSEL

1.  **Appellant**

    Eric Hernandez

    Trial Counsel:         John Terry  (State Bar No. 20872700)
    301 South Polk Street, Suite 630
    Amarillo, Texas 79101
    Telephone:  (806) 371-8999

    Appellate Counsel:    John Bennett  (State Bar No. 19799300)
    P.O. Box 19144
    Amarillo, Texas 79114
    Telephone:  (806) 282-4455

2.  **Appellee**

    The State of Texas

    Trial Counsel:         Audrey Mink  (State Bar No. 24060286)
    Potter County District Attorney's Office
    501 S. Fillmore, Suite 5-A
    Amarillo, Texas 79101
    Telephone:  (806) 379-2325

    Appellate Counsel:    Jack Owen  (State Bar No. 15369200)
    Katherine Levy  (State Bar No. 12266480)
    Potter County District Attorney's Office
    501 S. Fillmore, Suite 5-A
    Amarillo, Texas 79101
    Telephone:  (806) 379-2325

# TABLE OF CONTENTS

Identity of Parties and Counsel ..................................................................2

Index of Authorities ................................................................................5

Statement of the Case...............................................................................8

Statement Regarding Oral Argument ......................................................8

Issue Presented..........................................................................................8

**Did the trial court use the proper standard of review in ruling on the appellant's motion to suppress?**

Statement of Facts....................................................................................8

Summary of the Argument.....................................................................15

Argument ...............................................................................................15

    I.    a.    The Propriety of this Claim............................................15

            b.    Analysis of the Claim's Propriety ................................. 16

    II.    Standard of Review ........................................................17

    III.    The Level of Harm Required...........................................17

    IV.    Constitutional Law of Traffic Stops................................17

    V.    a.    Burden of Proof..............................................................18

            b.    Analysis of Evidence and Preservation of Error Relating to the Burden of Proof.......................................19

    VI.    Analysis of this Case under the Law of Traffic Stops and the Applicable Burden of Proof ...................................21

Prayer ................................................................................24

Certificate of Compliance ..................................................25

Certificate of Service .........................................................25

Appendix.............................................................. following page 25

*consisting of*:

Exhibit A ................................................................Judgment & Sentence

Exhibit B ............................................ Pages from the Reporter's Record
of the Suppression Hearing

# INDEX OF AUTHORITIES

Constitutional Provision

U.S. CONST., amend. IV (West supp. 2014)......................................................17


Cases

*Aldridge v. State*, 2013 WL 3461694 (Alas.Ct.App. 2013)
  (not designated for publication)..............................................................23

*Amador v. State*, 221 S.W.3d 666 (Tex.Crim.App. 2007)...................... 17,19,21

*Amador-Gonzalez v. United States*, 391 F.2d 308 (5th Cir. 1968).....................23

*Ford v. State*, 158 S.W.3d 488 (Tex.Crim.App. 2005) ............................... 17,20

*Holloway v. State*, 1998 WL 675876 (Tex. App. – Amarillo,
  October 1, 1998, pet. ref'd) (not designed for publication) ............... 19-20

*Maryland v. Wilson*, 519 U.S. 408, 117 S.Ct. 882, 137
  L.Ed.2d 41 (1997)...............................................................................17

*Montanez v. State*, 195 S.W.3d 101 (Tex.Crim.App. 2006)..............................16

*Sieffert v. State*, 290 S.W.3d 478 (Tex.App. – Amarillo 2009
  2009, no pet.) ...................................................................................18

*Smith v. State*, 789 S.W.2d 350 (Tex.App. – Amarillo 1990,
  pet. ref'd) ..........................................................................................24

*State v. Dixon*, 206 S.W.3d 587 (Tex.Crim.App. 2006)............................. 23-24

*State v. Gray*, 158 S.W.3d 465 (Tex.Crim.App. 2005) ............................... 18,20

*State v. Ross*, 32 S.W.3d 853 (Tex.Crim.App. 2000)................................. 18,20

*Swearingen v. State*, 143 S.W.3d 808 (Tex.Crim.App. 2004) ..........................17

*Turrubiate v. State*, 399 S.W.3d 147 (Tex.Crim.App. 2013)..............................21

*Ex parte Wilson*, 602 S.W.2d 902 (Tex.Crim.App. 1980) ........................... 19-20

*Whren v. United States*, 517 U.S. 806, 116 S.Ct. 1769, 135
     L.Ed.2d 89 (1996).....................................................................................22

*Young v. State*, 283 S.W.3d 854 (Tex.Crim.App), *cert. denied*,
     558 U.S. 1093, 130 S.Ct. 1015, 175 L.Ed.2d 622 (2009) ................... 18-21

Rules

TEX. R. APP. P. 33.1.................................................................................. 16,20

TEX. R. APP. P. 38.1......................................................................................7

TEX. R. APP. P. 44.2(a)..................................................................................17

NO. 07-14-388-CR

IN THE COURT OF APPEALS FOR

# THE SEVENTH SUPREME JUDICIAL DISTRICT OF TEXAS

AT AMARILLO, TEXAS

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

# ERIC HERNANDEZ
APPELLANT,

v.

# THE STATE OF TEXAS
APPELLEE.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

APPEAL FROM CAUSE NUMBER 67,846-A FROM THE
47th JUDICIAL DISTRICT COURT OF POTTER COUNTY,
THE HONORABLE DAN SCHAAP PRESIDING

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

# BRIEF FOR THE APPELLANT

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**TO THE HONORABLE JUSTICES OF THE COURT OF APPEALS:**

COMES NOW Eric Hernandez, appellant, and submits this Brief under

TEX. R. APP. P. 38.1, requesting a new trial in this cause.

## STATEMENT OF THE CASE

After his motion to suppress was overruled, the appellant pled guilty to a charge of possession of methamphetamine. The trial court accepted the plea agreement and sentenced him to 18 years' imprisonment and a fine of $500. (Clerk's Record (CR), v. 1, p. 73) (Exhibit A to this Brief).

## STATEMENT REGARDING ORAL ARGUMENT

Since the issue involved is unusual, the appellant requests oral argument.

## ISSUE PRESENTED

Did the trial court use the proper standard of review in ruling on the appellant's motion to suppress?

## STATEMENT OF FACTS

The appellant moved to suppress the results of a search, which occurred when the vehicle he was driving was pulled over. Among other things, the motion argued that the stop was a "pretext" one. (CR, v. 1, p. 17). But the prosecutor noted that one of the matters raised in the motion was whether the initial traffic stop was justified. (Reporter's Record (RR), p. 6).

8

At a hearing on the motion the appellant testified he had been with both the mother of his daughter and a man named Francisco Reyes on the night in question. At some point that evening, Mr. Reyes drove off in his pickup with the appellant as a passenger. (RR, p. 54). The appellant testified the headlights and taillights were on at that time. (RR, p. 55). Mr. Reyes drove to a location in Amarillo and got out, leaving the keys in the ignition, evidently giving the appellant permission to drive the pickup. The appellant testified he did not turn off the taillights – he walked around the pickup twice to check, and the taillights were already on and stayed on during the entire time he drove the vehicle that evening. (RR, p. 56). The appellant admitted on the stand, though, that he did not have a valid driver's license or proof of the pickup's insurance at that time. (RR, p. 57).

The officer who eventually stopped the pickup testified that after dark that evening he was sitting in his parked patrol car doing paperwork. (RR, p. 11, 13). The pickup the appellant was driving passed the patrol car, and the officer testified the pickup's headlights – *i.e.*, running lights or parking lights – were on, but no taillights were lit. (RR, p. 12). Newer model cars have headlights called daytime running lights that are always on when the vehicle is being operated, but the officer did not know if the 1997 pickup the appellant was driving had this feature. (RR, p. 28, 31, 33).

The officer followed the pickup with his own lights off; "I was attempting to see if he – if the problem was going to correct itself and it didn't. And I followed it for a couple of turns," and then:

> the brake lights were activated, and he stayed on them until when he let off of them, all the lights were on. So I don't know if he knew I was behind him or he just finally turned them on with the switch.

(RR, p. 12). The officer agreed with the statement that the appellant "hit his brakes and at that time somehow the taillights started working." (RR, p. 32-3). In response to defense counsel's question, the pickup's taillights came on before the video began:

> Q. So let me see if I understand just for summary here. You saw no taillights and then somehow once the video was running, miraculously the taillights were working. Does that pretty well cover it?
>
> A. They were working when the video came on, yes.

(RR, v. 40).

The officer then followed the pickup for what he thought was "three turns and two blocks." (RR, p. 13). Since not operating taillights while driving at night is an offense, he decided to stop the pickup. (RR, p. 14). He turned on his overhead lights, which also activated the patrol car's camera, "backdated" for thirty seconds. (RR, p. 14). The officer testified that the pickup's taillights came on *before* the video began, (RR, p. 27), so those lights were on for at least the thirty seconds before the officer activated his overhead lights. (RR, p. 14).

10

The video was entered into evidence as State's Exhibit 15 and partly played at the hearing. (RR, p. 23). It shows that when the officer activated his overhead lights, the appellant stopped. But it also shows that the area the officer chose for the stop was not particularly well lit – a bright streetlight shines in the vicinity but is partly obscured by a tree. Nor do the streets along which the officer followed the appellant appear less safe or more advantageous for a stop than the area through which the officer followed the pickup.

The officer testified the pickup's registration label was altered; its number was changed so the registration appeared to be current. (RR, p. 18). After pleasantries, he asked the appellant for identification. (RR, v. 14). The appellant took out his wallet and held it on his lap, which the officer testified is "normal." (RR, v. 15). Initially the appellant handed the officer a picture of a child; he fumbled through his wallet, and the officer saw an ID card among the contents, but the appellant did not hand the card to the officer, which made the officer suspicious – the officer felt the appellant was "trying to hide his ID from me." (RR, p. 16). The appellant testified the ID was issued by his employer so the appellant can, among other things, cash checks. (RR, p. 58).

The officer stated the appellant did not "bring his wallet up to me" – instead the appellant kept his hands in his lap, "like he was trying to hide something, be it a weapon or…" (RR, p. 17). The appellant testified that at that

11

time he was stalling for fear of going to jail, since he had no valid driver's license. (RR, p. 58). He could not bring his wallet upwards from his lap, he testified, because the wallet was chained to a loop on his trousers, like one used by a biker or trucker – "it only goes so far because of the chain." (RR, p. 58-9).

Due to the possibility of a weapon, the officer asked the appellant to step out. The officer then asked and received consent to search the appellant's pocket, where he found methamphetamine. The officer therefore arrested the appellant for possession of a controlled substance. (RR, p. 20-1, 38). A vehicle inventory revealed, among other things, more methamphetamine and a glass smoking pipe. (RR, p. 22).

When asked why he was concerned that the appellant might have a weapon or might present a threat, the officer answered that when he questioned the appellant before removing him from the pickup, the appellant could not tell him who owned the pickup:

> He stuttered. Like he didn't produce the answer immediately. And through my experience, if you borrow somebody's truck, you are going to know who you borrowed. And he didn't – he wouldn't tell me who he borrowed the truck from … Which is indicative to most illegal activity if they're not in their truck.

(RR, p. 25). But on the video the appellant can be heard twice answering clearly – and quickly in response to the officer's inquiry – that the truck belonged to Francisco Reyes. (State's Exhibit 15, at 23:15:51 and 23:16:03).

Throughout the testimony the fact that the stop was warrantless was clear: the officer stopped the pickup the appellant was driving because, he stated, the pickup's taillights were off; the stop was due to that violation. (RR, p. 14). The officer did not know at that time that the appellant had no driver's license, did not know that the registration had been altered, and was unaware of the methamphetamine in the appellant's pocket and elsewhere in the pickup. (RR, p. 35-6). Nothing suggested a warrant was issued.

The mother of the appellant's daughter then testified that a friend named Francisco owns the pickup. She saw Francisco drive it that evening after dark with the appellant as a passenger. The pickup's taillights were on. (RR, p. 43-47). When the brake lights went off, the taillights were still on. (RR, p. 47).

At closing argument, defense counsel argued that the evidence calls into question the officer's testimony. The trial court agreed this creates an issue. (RR, p. 68) (Exhibit B to this Brief). But the trial court placed the burden on the *appellant* to *disprove* the officer's allegation that the taillights were initially off:

> *I think I have to take the officer's observations at face value*, absent evidence that this vehicle *could not have* done what the officer surmised it did because of what he observed … I don't hear the evidence that says it's not possible. I'm going to have to take what he says at face value.

(RR, p. 69) (emphases added) (Exhibit B). The defense specifically contested this placement of the burden:

> Basically, that he has to have objective – articulable, objective reasons for the stop. And our position is that the video renders it a question of the officer's word. We have two other people who say those lights were on and we saw them.

(RR, p. 70) (Exhibit B). But the trial court simply rejected this, and suggested that the appellant could have a jury decide the issue:

> of course, you know, you're probably entitled to have a jury to make a decision about any of that. But at this point, I'm not going to grant the Motion to Suppress.

(RR, p. 71) (Exhibit B). The trial court took copies of case law submitted by each side, stating that "if upon review of those, I come to a different conclusion, I will certainly advise y'all, but I don't think that's going to be the situation." (RR, p. 72).

The appellant later accepted the State's plea offer and was sentenced accordingly, but the certification of appeal recites that because matters were raised by written motion and ruled on beforehand – and had not been waived or withdrawn – the appellant still enjoyed the right of appeal. (CR, v. 1, p. 57). This was also stated in the plea bargain papers, (CR, v. 1, p. 60), and by the prosecutor at the plea hearing: "It is part of our agreement that he will preserve his appellate right on the issues raised at the Motion to Suppress." (RR, plea hearing, p. 11).

## SUMMARY OF THE ARGUMENT

The appellant respectfully urges that the trial court assigned an improper burden when evaluating the motion to suppress and the evidence adduced. Instead of judging the witnesses' credibility and drawing inferences in order to decide whether the officer had reasonable suspicion in order to stop the pickup, the trial court explicitly took the officer's testimony "at face value" and required the appellant to produce proof showing that the officer's statements were false. Since the law requires the *State* to prove that the stop was reasonable under the totality of the circumstances, the trial court did not actually evaluate this, and appellant's guilty plea should be vacated and the cause remanded.

## ARGUMENT

Did the trial court use the proper standard of review in ruling on the motion to suppress?

I.    a.    <u>The Propriety of this Claim</u>

To preserve a complaint for appellate review, the complaining party must have made a proper "timely request, objection or motion," stating "the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity" to "make the trial court aware of the complaint…" And the trial court must have ruled on the matter "either expressly or implicitly," or

refused to do so. TEX. R. APP. P. 33.1(a). "The record must sufficiently reflect that the trial court ruled adversely on a motion," but a "trial court's ruling on a matter need not be expressly stated if its actions or other statements otherwise unquestionably indicate a ruling." *Montanez v. State*, 195 S.W.3d 101, 104 (Tex.Crim.App. 2006).

b.      Analysis of the Claim's Propriety

The appellant filed a written motion to suppress arguing that the stop was improper. (CR, v. 1, p. 17-18). After hearing the evidence, the trial court stated that at that point, "I'm not going to grant the Motion to Suppress." (RR, p. 72). Although the trial court left open the possibility that its decision could change after reading the case law, no further action on the appellant's part was necessary: "if upon review of those, I come to a different conclusion, I will certainly advise y'all, but I don't think that's going to be the situation." (RR, p. 72). And in the certification of appeal, the trial court made clear its conclusion – as did the State – that an adverse ruling on the suppression matter had been made. (CR, v. 1, p. 57, 60; RR, plea hearing, p. 11). Even if the ruling was not expressly stated, which it seems to have been, "its actions or other statements otherwise unquestionably indicate a ruling." *Montanez*, 195 S.W.3d at 104. The matter was therefore properly preserved for review.

16

## II.     Standard of Review

Whether a lower court used the applicable standard of review is reviewed *de novo*. *Swearingen v. State*, 143 S.W.3d 808, 810 (Tex.Crim. App. 2004).

## III.    The Level of Harm Required

Claims of improper searches are constitutional in nature. U.S. CONST., amend. IV (West supp. 2014). "If the appellate record in a criminal case reveals constitutional error that is subject to harmless error review," the conviction must be reversed unless the court "determines beyond a reasonable doubt that the error did not contribute to the conviction…" TEX. R. APP. P. 44.2(a).

## IV.    Constitutional Law of Traffic Stops

The reasonableness of a traffic stop, as any Fourth Amendment matter, is evaluated by balancing "the public interest and the individual's right to personal security free from arbitrary interference by law officers." *Maryland v. Wilson*, 519 U.S. 408, 411, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997). "An officer conducts a lawful temporary detention when he has reasonable suspicion to believe that an individual is violating the law." *Ford v. State*, 158 S.W.3d 488, 492 (Tex.Crim.App. 2005). Once the burden is shifted, the State must prove reasonableness "under the totality of the circumstances." *Amador v. State*, 221 S.W.3d 666, 672 (Tex.Crim.App. 2007). The "burden is on the State to elicit

17

testimony showing sufficient facts to create a reasonable suspicion." *Sieffert v. State*, 290 S.W.3d 478, 484 (Tex.App. – Amarillo 2009, no pet.).

And an officer's *own* evaluation of what constitutes "reasonable suspicion" is by no means the end of the matter. In evaluating a claim of reasonable suspicion the trial court is "the sole trier of fact and judge of credibility" and is "not compelled to believe" officers' testimony, "even if uncontroverted, based on credibility and demeanor." *State v. Ross*, 32 S.W.3d 853, 857 (Tex.Crim.App. 2000). The trial court's proper evaluation of the testimony is the key to appellate analysis: "the judge may believe or disbelieve all or any part of a witness's testimony, even if that testimony is not controverted," because "it is the trial court that observes first hand the demeanor and appearance of a witness, as opposed to an appellate court which can only read an impersonal record." *State v. Gray*, 158 S.W.3d 465, 466-7 (Tex.Crim. App. 2005).

V.    a.    Burden of Proof

Where a defendant attempts to suppress evidence due to what is claimed to be an illegal arrest, he bears the "initial burden of proof … to rebut the presumption" that the officer's conduct was proper, which he may satisfy by "*establishing* that he was arrested without a warrant." *Young v. State*, 283

S.W.3d 854, 872 (Tex.Crim.App) (emphasis added), *cert. denied*, 558 U.S. 1093, 130 S.Ct. 1015, 175 L.Ed.2d 622 (2009). The "burden then shifts to the State to prove that the search or seizure was nonetheless reasonable under the totality of the circumstances." *Amador*, 221 S.W.3d at 672.

b.      Analysis of Evidence and Preservation of Error
          Relating to the Burden of Proof

The appellant must "establish" that the arrest was warrantless. In *Young*, whether a warrant existed was uncertain; the officer testified he was searching for a car, which he found at a house with the appellant. When ordered outside, "the appellant was uncooperative, and he was arrested." *Id*. at 872. But

> the appellant failed to offer evidence that the arrest was warrantless. He could have done so easily by asking Officer Hodge if the arrest was made pursuant to a warrant. The appellant, however, failed to do so. Therefore, we must presume proper conduct, and the burden never shifted to the State to produce evidence of a warrant or, alternatively, to prove the reasonableness of the arrest.

*Id*. Yet where the fact of a warrantless arrest is obvious, that matter *is* established; "Any ultimate fact may be established by circumstantial evidence from which the jury" or presumably the trial court sitting as factfinder "may draw reasonable inferences." *Holloway v. State*, 1998 WL 675876, at *2 (Tex. App. – Amarillo, October 1, 1998, pet. ref'd) (not designed for publication), citing *Ex parte Wilson*, 602 S.W.2d 902, 905 (Tex.Crim.App. 1980).

19

Since here, unlike in *Young*, the fact that the stop was made without a warrant was obvious, and particularly since the State elicited this testimony and did not contest the matter, the lack of a warrant was properly established. *Holloway*, 1998 WL 675876, at *2; *Wilson*, 602 S.W.2d at 905.

And despite the clear lack of a warrant, which should have shifted the burden to the *State*, the trial court placed the burden on the *appellant* to *disprove* the officer's allegation; the trial court explicitly accepted the latter at face value:

> *I think I have to take the officer's observations at face value*, absent evidence that this vehicle *could not have* done what the officer surmised it did because of what he observed … I don't hear the evidence that says it's not possible. I'm going to have to take what he says at face value.

(RR, p. 69) (emphases added). Thus the trial court did not evaluate the officer's credibility under *Ross* and did not take into account the controverting testimony – although such contradiction is not required anyway under *Gray* – and thus did not judge whether the officer *had* reasonable suspicion under *Ford* to stop the appellant. And the defense argued that such a burden was improper:

> Basically, that he has to have objective – articulable, objective reasons for the stop. And our position is that the video renders it a question of the officer's word. We have two other people who say those lights were on and we saw them.

(RR, p. 70). But the trial court simply suggested that this would be relevant in front of a jury. (RR, p. 71). The matter was therefore properly preserved for review. Rule 33.1(a), *supra*.

20

VI.    Analysis of this Case under the Law of Traffic Stops
       and the Applicable Burden of Proof

The appellant does *not* contend that, had the trial court used the proper standard of review of the evidence, its conclusions should not stand here. "Almost total deference is given to the trial court's implied findings, especially those based on an evaluation of witness credibility and demeanor." *Turrubiate v. State*, 399 S.W.3d 147, 150 (Tex.Crim.App. 2013).

But there's the rub. The trial court's conclusion was *not* made based on an evaluation of witness credibility and demeanor so as to judge whether the State met its burden of showing the officer had reasonable suspicion to make the stop under the totality of the circumstances, as *Young* and *Amador* require. Instead the trial court explicitly accepted the officer's testimony at face value and required the appellant to *disprove* the allegation.

And had the trial court evaluated all the controverted testimony under the proper standard, it might conceivably have granted the appellant's motion. This negates any suggestion of harmlessness beyond a reasonable doubt under Rule 44.1(a). At very best the officer's memory was partly inaccurate – he testified the appellant did not say who owned the pickup. This is belied by the video, which reveals that the appellant clearly and truthfully stated the vehicle belongs to "Francisco Reyes." (RR, p. 25; State's Exhibit 15, at 23:15:51 and 23:16:03).

21

The officer's testimony is also odd in another respect. He stated that the taillights were initially off, but that they came on before the camera began taping the incident, while the appellant was "riding" the pickup's brake lights. This is plausible. The officer testified he followed the pickup when he says the taillights were off, "attempting to see if he – if the problem was going to correct itself and it didn't." Yet the problem *was* then corrected, as he further testified; the taillights were turned on while the brake lights were on, so the taillights stayed on when the brake was no longer used. (RR, p. 12). And the officer still followed the pickup for at least thirty seconds after the taillights were turned on, *then* decided to make the stop despite that the correction of the sole traffic violation he alleged. (RR, p. 13-14).

This is curious. On the one hand, the appellant's written motion to suppress, while arguably inartfully drawn, contends that the stop was a "pretext" one. (CR, v. 1, p. 17). The doctrine of pretext stops under the Fourth Amendment has largely been rendered defunct by rulings that "the constitutional reasonableness of traffic stops" does not depend "on the actual motivations of the individual officers listed" – the proper basis for complaint of intentional discrimination in applying the law "is the Equal Protection Clause, not the Fourth Amendment." *Whren v. United States*, 517 U.S. 806, 813, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996).

On the other hand, the delay in making the stop is relevant to the officer's credibility. In *State v. Dixon*, 206 S.W.3d 587 (Tex.Crim.App. 2006), a delay was noted between observation of a traffic offense and the resulting stop "diminishes the credibility of" the officers' "claim that they stopped him for an unlawful turn." In granting the suppression motion and entering findings of fact "relating to the time and distance the police followed the driver," the trial court "was in effect saying, 'If you really thought the driver had committed a traffic offense, then why did you wait so long before pulling him over?'" *Id.* at 591.

In a recent Alaska case, in contrast, an officer testified he stopped the defendant "as soon as it was practical to do so. He explained at some length why he was unable to stop" the defendant "right after he saw the traffic violation." *Aldridge v. State*, 2013 WL 3461694, at *3 (Alas.Ct.App. 2013) (not designated for publication). And in an older case the Fifth Circuit noted that although a delayed traffic stop "is not necessarily improper, and at times may be good police practice," *Amador-Gonzalez v. United States*, 391 F.2d 308, 314 (5th Cir. 1968), the officer making the stop should be prepared to explain the delay:

> every time there is a delay in making the arrest and there is a search made as incidental to the arrest, the law enforcement officers take the risk that they will be charged with using the arrest as a mere pretext for the search.

*Id.*

Here the officer's admission of waiting to stop the pickup, combined with a lack of explanation for and a lack of impediment to making the stop earlier, plus the fact that the area in which he actually made the stop was no more favorable than the places he could have earlier stopped the appellant, is relevant to whether he had reasonable suspicion to make the stop in the first place. When the doctrine of pretext stops was more viable, this Court noted that the theory may apply to "traffic violations by officers who … have delayed the stop until long after observing the traffic infractions." *Smith v. State*, 789 S.W.2d 350, 352 (Tex.App. – Amarillo 1990, pet. ref'd). Under *Smith* and *Dixon*, these facts affect the reasonableness of the stop and the officer's credibility in claiming that the pickup's taillights were off.

But the trial court considered neither the contested fact of the taillights' operation, nor the delay, nor any other factors in the appellant's favor. The trial court felt the officer's testimony was to be taken at face value and that the appellant bore the burden of proving him wrong, despite having established that no warrant existed.

## PRAYER

For the reason stated, the appellant prays the Court vacate his plea and order a new trial, or order all relief the Court may deem appropriate.

Respectfully submitted,

/s/ JOHN BENNETT
John Bennett
Post Office Box 19144
Amarillo, Texas 79114
Telephone: (806) 282-4455
Facsimile: (806) 398-1988
AppealsAttorney@gmail.com
State Bar No. 00785691
Attorney for the Appellant

## CERTIFICATE OF COMPLIANCE

I hereby certify that this entire Brief contains 4,848 words.

/s/ JOHN BENNETT
John Bennett

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above was served by personal delivery, on Jack Owen, Esq. and Kathy Levy, Esq., Assistant Potter County District Attorneys, at 501 S. Fillmore, Amarillo, TX 79101, on March 16, 2015, and another by email to them at jackowen@co.potter.tx.us.

/s/ JOHN BENNETT
John Bennett

# APPENDIX

### Exhibit A

## JUDGMENT & SENTENCE



CASE NO. 67,846-A    COUNT
INCIDENT NO./TRN: 9157882320 A001

| THE STATE OF TEXAS | § | IN THE 47TH DISTRICT |
|---|---|---|
| v. | § | COURT |
| ERICK HERNANDEZ | § | POTTER COUNTY, TEXAS |
| STATE ID NO.: TX04311946 | § | |

# JUDGMENT OF CONVICTION BY COURT — WAIVER OF JURY TRIAL

| Judge Presiding: | HON. DAN SCHAAP | Date Judgment Entered: | 10/20/2014 |
|---|---|---|---|
| Attorney for State: | AUDREY MINK | Attorney for Defendant: | JOHN TERRY |

Offense for which Defendant Convicted:
**POSSESSION OF CONTROLLED SUBSTANCE, ENHANCED**

| Charging Instrument: **INDICTMENT** | Statute for Offense: **481.115[d] Health and Safety Code** |
|---|---|

Date of Offense:
**9/22/2013**

| Degree of Offense: **2ND DEGREE FELONY** | Plea to Offense: **GUILTY** | Findings on Deadly Weapon: **N/A** |
|---|---|---|

Terms of Plea Bargain:
**EIGHTEEN (18) YEARS TDCJ-ID, $500 FINE, CODIS SAMPLE**

| Plea to 1st Enhancement Paragraph: | **TRUE** | Plea to 2nd Enhancement/Habitual Paragraph: | **N/A** |
|---|---|---|---|
| Findings on 1st Enhancement Paragraph: | **TRUE** | Findings on 2nd Enhancement/Habitual Paragraph: | **N/A** |

| Date Sentence Imposed: **10/20/2014** | Date Sentence to Commence: **10/20/2014** |
|---|---|

| Punishment and Place of Confinement: | **EIGHTEEN(18) YEARS INSTITUTIONAL DIVISION, TDCJ** |
|---|---|

THIS SENTENCE SHALL RUN **CONCURRENTLY.**

☐ SENTENCE OF CONFINEMENT SUSPENDED, DEFENDANT PLACED ON COMMUNITY SUPERVISION FOR **N/A** .

| Fine: **$ 500** | Court Costs: **as per attached bill of cost** | Restitution: **$ N/A** | Restitution Payable to: ☐ VICTIM (see below)  ☐ AGENCY/AGENT (see below) |
|---|---|---|---|

Sex Offender Registration Requirements do not apply to the Defendant. TEX. CODE CRIM. PROC. chapter 62
The age of the victim at the time of the offense was **N/A** .

| Time Credited: | If Defendant is to serve sentence in TDCJ, enter incarceration periods in chronological order. | | |
|---|---|---|---|
| | From **9/22/2013** to **10/20/2014**   From   to   From   to | | |
| | From   to   From   to   From   to | | |
| | If Defendant is to serve sentence in county jail or is given credit toward fine and costs, enter days credited below. | | |
| | **N/A DAYS   NOTES: N/A** | | |

All pertinent information, names and assessments indicated above are incorporated into the language of the judgment below by reference.
This cause was called for trial in Potter County, Texas. The State appeared by her Assistant District Attorney.
**Counsel / Waiver of Counsel (select one)**
☒ Defendant appeared in person with Counsel.
☐ Defendant knowingly, intelligently, and voluntarily waived the right to representation by counsel in writing in open court.
Both parties announced ready for trial. Defendant waived the right of trial by jury and entered the plea indicated above.
The Court then admonished Defendant as required by law. It appeared to the Court that Defendant was mentally competent to stand trial, made the plea freely and voluntarily, and was aware of the consequences of this plea. The Court received the plea and



 976554

67846

 Page 1 of 2

entered it of record. Having heard the evidence submitted, the Court found Defendant guilty of the offense indicated above. In the presence of Defendant, the Court pronounced sentence against Defendant.

The Court **FINDS** Defendant committed the above offense and **ORDERS, ADJUDGES AND DECREES** that Defendant is **GUILTY** of the above offense. The Court **FINDS** the Presentence Investigation, if so ordered, was done according to the applicable provisions of TEX. CODE CRIM. PROC. art. 42.12 § 9.

The Court **ORDERS** Defendant punished as indicated above. The Court **ORDERS** Defendant to pay all fines, court costs, and restitution as indicated as per attached bill of cost.

### Punishment Options (select one)

☒ **Confinement in State Jail or Institutional Division.** The Court **ORDERS** the authorized agent of the State of Texas or the Sheriff of this County to take, safely convey, and deliver Defendant to the **Director, Institutional Division, TDCJ.** The Court **ORDERS** Defendant to be confined for the period and in the manner indicated above. The Court **ORDERS** Defendant remanded to the custody of the Sheriff of this county until the Sheriff can obey the directions of this sentence. The Court **ORDERS** that upon release from confinement, Defendant proceed immediately to the Potter County District Clerk. Once there, the Court **ORDERS** Defendant to pay, or make arrangements to pay, any remaining unpaid fines, court costs, and restitution as ordered by the Court as per attached bill of costs.

☐ **County Jail—Confinement / Confinement in Lieu of Payment.** The Court **ORDERS** Defendant immediately committed to the custody of the Sheriff of Potter County, Texas on the date the sentence is to commence. Defendant shall be confined in the Potter County Jail for the period indicated above. The Court **ORDERS** that upon release from confinement, Defendant shall proceed immediately to the Potter County District Clerk. Once there, the Court **ORDERS** Defendant to pay, or make arrangements to pay, any remaining unpaid fines, court costs, and restitution as ordered by the Court as per attached bill of costs.

☐ **Fine Only Payment.** The punishment assessed against Defendant is for a **FINE ONLY.** The Court **ORDERS** Defendant to proceed immediately to the Office of the Potter County **District Clerk.** Once there, the Court **ORDERS** Defendant to pay or make arrangements to pay all fines and court costs as ordered by the Court in this cause as per attached Bill of Cost.

### Execution / Suspension of Sentence (select one)

☒ The Court **ORDERS** Defendant's sentence **EXECUTED.**

☐ The Court **ORDERS** Defendant's sentence of confinement **SUSPENDED.** The Court **ORDERS** Defendant placed on community supervision for the adjudged period (above) so long as Defendant abides by and does not violate the terms and conditions of community supervision. The order setting forth the terms and conditions of community supervision is incorporated into this judgment by reference.

The Court **ORDERS** that Defendant is given credit noted above on this sentence for the time spent incarcerated.

### Furthermore, the following special findings or orders apply:

DEFENDANT IS ORDERED TO PROVIDE CODIS SAMPLE.

Signed and entered on the _14_ day of _Nov_, 2014.

X _____
**DAN SCHAAP**
JUDGE PRESIDING

Clerk:

THE STATE OF TEXAS    X        Cause No.

VS.    X

Eric Hernandez    X    67846-A

X Eric Hernandez

_____
Signature of Bailiff,
Acting for the Court, who took
the thumbprint immediately to
the left hereof on this

_20th_ _____ day of

_October_ 20_14_

Defendant's Right
Thumbprint

74

67846                                              Page 2 of 2

Exhibit B

# PAGES FROM REPORTER'S RECORD OF THE SUPPRESSION HEARING

earlier. And you don't really have evidence about this particular truck or whether this is even possible or not.

MR. TERRY: No. And it's not referenced in his report anywhere either.

THE COURT: I -- I -- I understand that his report is -- is probably -- and I haven't seen the report, but I would presume it's not detailed and/or is it intended to be detailed to differentiate between observing what he sees on the front versus the back and explaining that for purposes of your cross-examination of him.

MR. TERRY: Your Honor, I would posit to the Court, there's a reason we have in-car video. And if in-car video doesn't match, that brings into question the --

THE COURT: Well, I know it -- it creates an issue, Mr. Terry. It does create an issue. But, again, he's very clearly testified that he followed the vehicle for a while to observe what was going on. And we also know that it kicks back and how that happens, I don't really know, but it goes and captures some time, you know, backwards from when the lights are initiated, but it doesn't capture five-minutes worth. It captures 30-seconds worth.

MR. TERRY: Well, Ms. Mink asked if it was possible there was a short when she cross-examined him. One of the things that the video shows is those lights kept working. That's all.

THE COURT: You know, I -- again, I think that's just speculation there and I wouldn't consider it anything besides speculation. But I think I have to take the officer's observations at face value, absent evidence that this vehicle could not have done what the officer surmised it did because of what he observed. And his surmise in that regard is that the headlight switch was not engaged and that it had its front beams on because it was turned on and it was running with those as we have seen vehicles coming down the road in the middle of the day with their headlights on. We call them headlights because that's what we see. And those lights are automatic. No one has to, quote, unquote, turn them on. And so that's sort of where it boils down to me -- for me here is, is do we have evidence that what the officer is suggesting is not possible?

MR. TERRY: Well --

THE COURT: I don't hear the evidence that says it's not possible. I'm going to have to take what he says at face value. And that means that I think he had a reasonable basis to make the stop and I think

your client consented to the search.

MR. TERRY: Okay. I would -- without going through everything -- and I would simply submit some cases to the Court.

THE COURT: Oh, and I will certainly take your cases into consideration. I mean, they probably don't address my specific concerns about the evidence.

MR. TERRY: They do not. But the cases are -- let me just say it for the record. Florida versus Royer.

THE COURT: I'm familiar with it.

MR. TERRY: Baldwin versus State.

THE COURT: Not so.

MR. TERRY: Wade versus State. McQuarters versus State.

THE COURT: And -- and -- and -- is that the -- and what is the gist of those cases?

MR. TERRY: Basically, that he has to have objective -- articulable, objective reasons for the stop. And our position is that the video renders it a question of the officer's word. We have two other people who say those lights were on and we saw them. And consequently, the video -- there's a reason for that. And that's why when sometimes officers' testimonies don't match what happens, we go with what

our lying eyes say.

THE COURT: Well -- and -- and -- and, of course, you know, you're probably entitled to have a jury to make a decision about any of that. But at this point, I'm not going to grant the Motion to Suppress.

MR. TERRY: I understand. And there's one other case I'm submitting.

THE COURT: Okay.

MR. TERRY: Smirl, which was --

THE COURT: Spell that.

MR. TERRY: S-M-I-R-L.

THE COURT: Okay.

MR. TERRY: Versus State. It was decided October 13th of 2014, here in the 7th Court of Appeals.

THE COURT: Hot off the presses.

MR. TERRY: Yeah. And it's included. And I have copies of all three of these cases for Ms. Mink.

THE COURT: Okay. And does it basically stand for the same proposition?

MR. TERRY: Pretty much. Let me -- on Smirl, the specific language to stop and temporarily detain a person, an officer must have specific, articulable facts that would lead him to reasonably conclude that a person is, has been or will be engaged